Decided April 9, 2003.

*Clifton Boone*, for appellant.
*Michael R. Hurst*, for appellee.

### A03A0600. SALHAB v. TIFT HEART CENTER, P.C. et al.

(581 SE2d 363)

Adams, Judge.

After being terminated from her employment, Josephine Salhab sued her former employer for breach of a written employment contract and defamation. Although the trial court decided that her employer was entitled to judgment as a matter of law, we find otherwise and reverse.

On July 14, 1997, Salhab and Tift Heart Center, P.C. (THC) entered into a written employment agreement under which Salhab contracted to work as a physician's assistant at THC for 24 months. Lisa M. Dix-Emperador, M.D., the president and sole stockholder of THC, executed the contract on behalf of the employer, THC. Paragraph 4.01 authorized the agreement's termination "upon the occurrence of any of the following events":

A. By notice in writing to the other party given 90 days prior to the date of termination. B. Material breach of contract by Employee or Employer. C. Death or total disability of Employee. D. Employee conducting herself in an unprofessional, unethical or fraudulent manner, or if, in the opinion of Employer, such conduct discredits Employer or is detrimental to the reputation, character and standing of Employer.

During the seventh month of the contract, Dix-Emperador terminated Salhab's employment at THC. Thereafter, Salhab filed suit against THC, Dix-Emperador, and her husband Michael Emperador. Salhab sued THC and Dix-Emperador for breach of contract and defamation, and asserted a claim for tortious interference with contract against Emperador. In finding for the defendants, the court found no genuine issue of material fact in dispute.

1. Salhab contends that the trial court erred by construing the contested material facts in favor of the moving party. She argues that a jury should resolve the key facts in dispute and decide whether Dix-Emperador discharged her in good faith or did so for personal reasons unrelated to her job performance. We agree.

To prevail at summary judgment, the moving party must estab-

lish the absence of any genuine issue of material fact and that the undisputed facts when viewed in the light most favorable to the nonmoving party warrant judgment as matter of law. OCGA § 9-11-56 (c). A defendant may demonstrate this by showing the trial court that the documents, affidavits, depositions, and other evidence in the record disclose the absence of evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. *Odem v. Pace Academy*, 235 Ga. App. 648 (510 SE2d 326) (1998). When considering an appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002). In doing so, we must construe the evidence and all reasonable inferences therefrom in favor of the nonmoving party. *Chiaka v. Rawles*, 240 Ga. App. 792 (525 SE2d 162) (1999).

When so considered, the evidence demonstrates the existence of unresolved issues of disputed material fact that are not susceptible to summary adjudication. See *Vincent v. Bunch*, 240 Ga. App. 255, 258 (1) (522 SE2d 495) (1999). In conflicting affidavits, Dix-Emperador and Salhab offered divergent accounts of the events leading to Salhab's termination. Both sides agree that the events began with a telephone call from Salhab to Dix-Emperador at her home on the evening of February 11, 1998, but they disagree about the content of that conversation and the subsequent series of events.

The telephone call apparently involved discussion of Salhab's husband's attempts to obtain a job in Tifton, which would facilitate keeping Salhab in the area and available for employment with THC. Dix-Emperador testified that during that telephone conversation, "Ms. Salhab became hostile and verbally abusive with Affiant. Ms. Salhab was upset that her husband had not found a job in Tifton, Georgia and she blamed Affiant for not doing more to help him find a job." By Dix-Emperador's account, she and her husband and Salhab and her husband had all participated in the discussion while speaking on various telephone extensions. Dix-Emperador testified that as the conversation progressed, Salhab became increasingly hostile and "Ms. Salhab's husband began to make threats toward Affiant and her family." Dix-Emperador testified that Salhab's husband threatened to "come over to Affiant's home and put a bullet in the head of Michael Emperador, Affiant's husband." Dix-Emperador recounted that the next morning, at the office of THC, "Ms. Salhab continued to be hostile and verbally abusive toward Affiant despite Affiant's repeated requests that Ms. Salhab see heart patients that were there in the office." Dix-Emperador testified that Salhab refused to follow her direct instructions and "continued to be unapologetic and unremorseful for the telephone conversation of the previous night and demanded an apology from Affiant" because she perceived that

Dix-Emperador did not believe her husband's truthfulness. She testified that Salhab refused to calm down and perform her duties and that her behavior "occurred at the nurses' station and in the hallway immediately outside exam rooms and the reception area which were filled with patients." Testifying that she decided that Salhab "was conducting herself in an unprofessional manner," and that "Salhab's conduct was detrimental to the reputation, character and standing of [THC]," Dix-Emperador claimed that she terminated the employment agreement "for cause" under paragraph 4.01 (D) of the contract.

Offering a disparate recitation of events, Salhab controverted nearly all of Dix-Emperador's testimony. While acknowledging some misunderstanding about her husband's educational credentials, Salhab denied being hostile or verbally abusive or that her husband had spoken on a telephone extension. According to Salhab, the next morning she made hospital rounds, visited patients, then proceeded to THC's office to provide patient status reports. She denied having spoken at the nurses' station about any topic other than business. By her recount, "[after] I began to see office patients . . . I asked Dr. Dix [sic] to speak to me in her office and she agreed." Salhab testified that after closing her office door, Dix-Emperador

> became very hostile and angry toward me. She repeatedly called my husband a liar and stated that maybe I should consider whether to keep him as my husband. I asked Dr. Dix-Emperador at least twice to keep her voice down, as I was concerned her voice would carry outside the office and be overheard by patients and staff.

Salhab added, "[d]espite her personal attacks on my husband, I did remain calm and told her only that her comments were hurtful and insulting." Salhab denied refusing to follow any instruction or direction and denied that Dix-Emperador had asked her to return to work. She further denied conducting herself in an unprofessional manner at any time. Salhab testified that "Dr. Dix-Emperador had preplanned my termination regardless of what was said in the meeting."

As a general rule, "[w]hen an employment contract requires that termination be 'for cause' only, and the employer fires the employee without cause, a substantive breach occurs, and the employee would be entitled to seek full compensatory damages." *Savannah College of Art &c. v. Nulph*, 265 Ga. 662-663 (1) (460 SE2d 792) (1995). Although THC had authority to terminate Salhab's employment under Paragraph 4.01 for certain unprofessional or detrimental conduct, in light of the conflicting testimony, we cannot say that THC had proper cause or a sufficient basis for invoking that authority. Compare *Odem*, supra at 653 (1) (defendant presented undisputed

evidence of teacher's unsatisfactory professional performance and insubordination, grounds that authorized termination of his employment). Whether Salhab conducted herself in an unprofessional manner or whether Dix-Emperador acted in good faith in forming an opinion that Salhab exhibited "such conduct discredit[ing] Employer or [was] detrimental to the reputation, character and standing of Employer" are disputed questions of material fact and matters of credibility that a jury must resolve. See *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 205 (2) (345 SE2d 904) (1986) (summary judgment precluded where question of credibility arises as to a material issue). Therefore, we find that the defendants failed to establish their entitlement to judgment as a matter of law. Compare *Smitherman v. Mary House Ministries*, 200 Ga. App. 116, 117 (1) (407 SE2d 58) (1991) (evidence showed without dispute that board discharged employee for failure to perform her duties). Of course, our determination here signifies nothing regarding the underlying merits of Salhab's claims. See, e.g., *Raza v. Swiss Supply Direct*, 256 Ga. App. 175, 179 (568 SE2d 102) (2002).

2. In light of this holding, the remaining enumerations of error are moot.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 9, 2003.

*Shaw, Evans & Dallas, Howard R. Evans*, for appellant.

*Sowell & Sandifer, Gregory C. Sowell, Tillman M. Sandifer*, for appellees.