**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 14, 2012**

# In the Court of Appeals of Georgia

A12A1435. KAMMERER REAL ESTATE HOLDINGS, LLC v. PLH SANDY SPRINGS, LLC.

BRANCH, Judge.

The question in this suit is whether the appellant, defendant below, has a duty pursuant to an express easement to maintain and repair a sewer line that traverses the appellee's property. We agree with the trial court that the appellant has such a duty as a matter of law, based on the plain language of the relevant deed.

This appeal comes to us following summary judgment in favor of the appellee. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light

most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The material facts are not in dispute.[1] The parties each own tracts of land that, as of 1967, had common ownership that had planned and platted the property for use as a residential subdivision; the subdivision, however, was never built, and thereafter, the land was sold as separate undeveloped commercial real estate lots to the predecessors in title of the current parties. The property is traversed by Trowbridge Road. Appellee PLH Sandy Springs, LLC, now owns a portion of the original property located north of that road (the PLH Property); Appellant Kammerer Real Estate Holdings, LLC, now owns a portion of the original property located south of that road (the Kammerer Property). A drainage easement is shown on the 1967 plat running north (which is downhill) from the Kammerer Property, across the road, and across the PLH Property. The line exists today and still carries water across the PLH Property.

---

[1] We remind the parties and the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 25 (a) (1). This means that parties should not cite to the internal page number of a document included in the record, such as a deposition or affidavit, but rather to the record page number.

2

In 1977, while they still owned the entire parcel, including the two properties at issue, the common owners transferred the PLH Property to PLH's predecessors in title by way of a warranty deed (the 1977 Deed). In that deed, the common owners reserved an express sewer easement for the benefit of their remaining parcel, the relevant language of which follows:

> Also less and except a 20-foot wide sewer easement running in a generally southeasterly direction along the line of an existing 36-inch concrete pipe from the western boundary line of the hereinabove described easement to the northern right-of-way of Trowbridge Road. This easement is reserved by [ ] Grantors for the purpose of constructing and maintaining storm or sanitary sewer lines within said tract of land to serve Grantor's adjacent lands. It is understood that Grantor shall construct, maintain and repair said sewer lines in such a manner so as not to unreasonably interfere with the surface use by Grantee of the easement area. . . . Grantor shall maintain said sewer line in good order and repair and shall promptly restore, repair or replace any damage done to Grantee's surface use of the easement area, resulting from the construction, maintenance, repair, relocation, alteration or operation of said sewer line.

The once common owners later deeded the Kammerer Property to Kammerer's predecessor in interest, which, in turn, deeded the property to Kammerer. Neither party contends the easement has been abandoned.

3

In sum, it is not disputed that the 1977 Deed created a 20-foot wide easement along the pre-existing pipe and that, to this day, the Kammerer Property retains the benefit of that easement across the PLH Property. It is also not disputed that a portion of the old line located on the PLH Property collapsed and is in need of repair. What is disputed, however, is whether the relevant language of the easement obligates Kammerer to make those repairs.

The parties filed cross-motions for summary judgment. In a written order, the trial court construed the deed to mean that Kammerer had the obligation to maintain and repair the existing line, and it reserved the issue of damages for a later hearing. It therefore granted partial summary judgment in favor of PLH and denied Kammerer's cross motion.

1. In four enumerations of error, Kammerer contends the trial court misconstrued the deed. We disagree.

Kammerer's entire argument is based on a contention that the once common owners only reserved an easement "to allow the construction of *new* storm and sanitary sewer lines" for the purpose of serving the common grantors' plans to develop the property and, accordingly, any duty to maintain applies only to lines constructed after 1977, not the pre-existing sewer line located on the easement.

4

(Emphasis supplied.) And because no new lines were ever constructed, it contends it has no duty to repair the damage that occurred to the existing line. Kammerer bases its argument on a construction of this sentence of the easement, the highlighted words in particular:

> This easement is reserved by the Grantors for the *purpose of constructing and maintaining storm and sanitary sewer lines* within said tract of land *to serve Grantors' adjacent lands.*

Kammerer contends the sewer line at issue was pre-existing and not constructed "pursuant to the 1977 Deed to serve [Kammerer's] property." And Kammerer offers extrinsic evidence regarding the meaning of "serving" the Grantors' adjacent lands. PLH, on the other hand, argues that the plain language of the 1977 Deed requires Kammerer to maintain and repair any sewer line in the easement, regardless of when it was constructed.

The normal rules of contract construction govern review of the meaning of an express easement, which generally presents a question of law for the court. *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005). Those rules are well summarized in *Gold-Arrow Farms* and, foremost, they

require us to ascertain the intent of the parties based on the plain language of the agreement as a whole:

> The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation . . . the language used must be afforded its literal meaning and plain ordinary words given their usual significance.

(Citations and punctuation omitted.) Id. If the instrument contains an ambiguity, courts may look to the surrounding circumstances and consider parole evidence:

> An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations. Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parole evidence may not be considered unless the written instrument is ambiguous.

(Citations and punctuation omitted.) Id. at 866-867 (1).

6

We now apply those rules of construction to the 1977 Deed. In the 1977 Deed, the easement is defined as "a 20-foot wide sewer easement" running "along the line of an existing 36-inch concrete pipe." The deed specifically limits the purpose[2] of the easement in certain ways. The first sentence obviously limits the use of the easement to sewers. The second sentence specifically states that the easement is "for the purpose of constructing and maintaining storm or sanitary sewer lines within said tract of land to serve Grantor's adjacent lands." This second sentence reinforces the limitation on use to sewer lines, uses the plural "lines," and allows either storm or sanitary lines; thus, the easement plainly allows multiple sewer lines of different types on the easement. The final sentence mandates that the Grantor "maintain said sewer line[s]" and remedy "any damage done to the Grantee's surface use of the easement area, resulting from the construction, maintenance, repair, relocation, alteration or operation of said sewer line." Thus, Kammerer's duty to maintain multiple sewer lines and the surface of the easement could not be more clear. And, the easement itself does not reveal any intent of the parties to limit the duty to maintain to only newly constructed lines as opposed to all lines in the easement. For the above reasons, we conclude the

---

[2] Generally, an easement is a right to use or control land owned by another "for a specific limited purpose." Black's Law Dictionary (9th ed. 2009). See also *Brown v. Tomlinson*, 246 Ga. 513, 514 (272 SE2d 258) (1980) ("a special purpose").

7

easement unambiguously provides that Kammerer must maintain all sewer lines on the easement, regardless of when they were built.

Finally, even if we were to find an ambiguity in the deed (which we do not) and consider Kammerer's expert evidence regarding the intent of the parties, we would reach the same result. The expert averred that as the property is *currently configured*, with certain commercial buildings and parking lots, the water on the Kammerer Property drains through sewer lines not located on the easement at issue here and, therefore, not through the original 36-inch concrete sewer line. Kammerer contends this evidence shows the original sewer line does not "serve the Grantors' adjacent lands" as required in the emphasized language in this sentence in the 1977 deed:

> This easement is reserved by [ ] Grantors for the purpose of constructing and maintaining storm or sanitary sewer lines within said tract of land *to serve Grantor's adjacent lands*.

Kammerer concludes that the plain meaning of this sentence, together with the fact that it does not use the original 36-inch line, shows that it has no duty to maintain the original line.

This conclusion is flawed because Kammerer's expert failed to present any evidence of the intent of the parties at the time of execution of the 1977 Deed.

8

'Where the language of an instrument in writing is ambiguous, and may be fairly understood in more ways than one, it should be taken in the sense put upon it by the parties at the time of its execution, and the court will hear evidence as to the facts and surroundings, and decree according to the truth of the matter.'

*Irwin v. Young*, 212 Ga. 1, 7 (90 SE2d 22) (1955). See also *Dooley v. Dun & Bradstreet Software Services*, 225 Ga. App. 63, 65 (483 SE2d 308) (1997) ("It is the parties' intent at the time the contract is made that governs."); OCGA § 13-2-2 (1) ("if there is an ambiguity, latent or patent, it may be explained"). When examining the property, Kammerer's expert only opined about the current use of the Kammerer Property. And although he avers that he inspected two "Land Title Surveys" as a part of his investigation, neither document is in the record. See *Hughey v. Emory Univ.*, 168 Ga. App. 239, 240 (308 SE2d 558) (1983) (material on which expert relies must be attached or sufficiently identified and included in the record). Therefore Kammerer has failed to provide any evidence bearing on the intent of the original owners in connection with the 1977 Deed or evidence to show that the original 36-inch sewer line did not serve the original owners' lands.

2. Kammerer's argument that the trial court erred by finding as a matter of fact that a 48-inch section of pipe had been added after 1977 is moot given that Kammerer had a duty to maintain all sewer pipes within the easement, old and new.

3. Kammerer also contends the court erred by granting PLH partial summary judgment because PLH failed to join the City of Sandy Springs and the Fulton County Board of Education as necessary parties. See OCGA §§ 9-11-12 (b) (7) & 9-11-19. In its answer, Kammerer raised the defense with regard to Sandy Springs but not the Board. But even with regard to Sandy Springs, Kammerer never filed a motion to dismiss or otherwise elicited a ruling from the trial court on the matter.

"Where it is claimed that the plaintiff has failed to join an indispensable party, the issue must be raised by motion to dismiss filed pursuant to OCGA § 9–11–19. Otherwise, such defenses are deemed waived." *Jones v. Dykes*, 231 Ga. App. 110, 111 (4) (497 SE2d 828) (1998) (in an action to cancel a deed, issue of whether grantor was a necessary party was waived by failing to file a motion to dismiss) (punctuation omitted); *Wiepert v. Stover*, 298 Ga. App. 683, 685 (2) (680 SE2d 707) (2009) (same defense waived by failure to file motion to dismiss). See, e.g., *Reece v. Smith*, 276 Ga. 404, 406 (2) (577 SE2d 583) (2003) (although appellant raised issue in his first pleading, he never sought to join party in the suit).

10

Furthermore, "issues presented for the first time on appeal furnish nothing for this Court to review, for this is a court for correction of errors committed by the trial court where proper exception is taken." (Citation and punctuation omitted.) *Southside Planning & Development v. Commercial Cas. Ins. Co.*, 273 Ga. App. 704, 705 (615 SE2d 828) (2005) (regarding defense of indispensable party).

4. Finally, Kammerer's argument that we should reverse because the trial court considered PLH's motion for summary judgment even though it was filed after the deadline for motions under the court's scheduling order is without merit. See generally *Cooper-Bridges v. Ingle*, 268 Ga. App. 73, 75 (1) (601 SE2d 445) (2004) ("trial court has broad discretion in regulating its business and in scheduling trials") (punctuation and footnote omitted); *DeClue v. City of Clayton*, 246 Ga. App. 487, 493 (4) (540 SE2d 675) (2000) (same); Uniform Rules For The Superior Courts, Rule 6.6, 8.1.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*

11

December 14, 2012

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, Kammerer asserts that this Court failed to address its argument that PLH failed to proffer undisputed evidence that the original sewer line "served" its property. Kammerer, however, waived this argument.

In the trial court – both in its briefs and at oral argument – Kammerer's sole argument was that its duties under the easement pertained only to sewer lines that it (or its predecessor in title) constructed subsequent to the 1977 deed, and that, because it had not constructed any *new* sewer lines or "*additional facilities*," it could not be liable for the repair and maintenance of the pre-1977 sewer line. In its order, the trial court restated Kammerer's argument using the same words. On appeal, Kammerer made the same argument, but in so doing, Kammerer frequently quoted language in the 1977 Deed that states that the easement was "reserved by [ ] Grantors for the purpose of constructing and maintaining storm or sanitary sewer lines within said tract of land to serve Grantor's adjacent lands." Kammerer focused on the phrase "constructing and maintaining"; it never asked this Court to construe the word "serve," nor did it specifically argue that the original sewer line did not "serve" the Kammerer property. On motion for reconsideration, Kammerer contends we overlooked this argument.

As a general rule, "absent special circumstances [not applicable here], an appellate court need not consider [legal] arguments raised for the first time on appeal." *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002). But an argument on a factual issue that is part of the movant's prima facie case is not waived by failing to raise it in the trial court. *Dental One Assoc. v. JKR Realty Assoc.*, 269 Ga. 616, 617-618 (1) (501 SE2d 497) (1998). As explained by the Supreme Court, *Dental One* holds the following:

> [T]o be entitled to summary judgment, a party who bears the burden of proof at trial must present the trial court with the facts showing its entitlement to judgment. When the record fails to contain the facts supporting the grant of summary judgment, the non-movant may argue this ground to the appellate court regardless of whether the non-movant asserted an "objection to the prima facie case."

*Pfeiffer*, 275 Ga. at 830 (3), citing *Dental One.*

Here, however, Kammerer's new argument would require us to construe the meaning of the term "serve," determine whether the word was ambiguous, and if so, consider parole evidence on the meaning. And whether a contract is ambiguous is a question of law for the court. *Roberson v. Leone*, 315 Ga. App. 459, 462 (726 SE2d 565) (2012); *Rentrite, Inc. v. Sentry Select Ins. Co.*, 293 Ga. App. 643, 644 (667 SE2d 888) (2008). Thus, Kammerer's new argument is not one asserting that the record fails to contain the facts supporting the grant of summary judgment. Rather, it presents a question of law, or, at best, a mixed question of law and fact. Accordingly, the general rule of waiver in *Pfeiffer,* not the factual issue exception articulated in *Dental One*, applies, and Kammerer has waived the new argument for the purpose of appeal.